IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PETER FALKNER and CARLA FALKNER, <br><br> Plaintiffs, <br><br> v. <br><br> OVUM MEDICAL, LLC; et al., <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 1:25-cv-00090 ) ) ) ) ) |

**MOVING DEFENDANTS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Innovative Medicine Partners, LLC ("IMP"), InnoMed Seven, LLC ("InnoMed Seven"), Kirby Plessala and Deneen Plessala (together, the "Plessalas"), and Plessala Gynecology & Fertility, PLLC ("PGF," and collectively with IMP, InnoMed Seven, and the Plessalas, the "Moving Defendants") move to dismiss Plaintiffs' Peter and Carla Falkner (the "Falkners") Second Amended Complaint (Doc. 1-2, the "Complaint") for failure to state a claim. In further support, the Moving Defendants state as follows:

**INTRODUCTION**

This lawsuit is a misguided attempt to allege a breach of a settlement agreement where there has been none. In 2023, IMP, the Plessalas, and the Falkners,

among other parties, entered into a class action settlement agreement (the "Settlement Agreement," attached hereto as **Exhibit 1**) to resolve various claims that had been asserted against the Falkners in connection with their ownership and management of IMP, InnoMed Seven, and other IMP affiliates[1] (collectively, the "IMP Companies"). The IMP Companies had been created by the Falkners for the ostensible purpose of developing medical device ideas.

As part of the settlement, the Falkners relinquished all of their interest in the IMP Companies. In return, IMP agreed to provide the Falkners with an "Earnout Right," defined as a small share of future distributions made to the owners and investors in the IMP Companies to be paid to the Falkners in certain circumstances. Importantly, the Earnout Right did not kick in until a "Floor" had been met, defined as the repayment of *all* investment and contributions made by the investors in and owners of the IMP Companies, plus a ten percent annual return on those investments and contributions. The point of the Floor was to ensure that all investors in the IMP Companies, who had been allegedly defrauded by the Falkners, would first be repaid in full, plus a return, before the Falkners received a penny. And because total investment in the IMP Companies was in the millions of dollars, the Falkners'

---

[1] As reflected in the Settlement Agreement, the other IMP affiliates that were parties to the settlement are InnoMed One, LLC, InnoMed Five, LLC, and InnoMed Eight, LLC. Collectively, those three entities and InnoMed Seven are referred to as the "InnoMeds."

Earnout Right would not kick in unless and until the IMP Companies had earned many millions in profit commercializing their medical device technologies.

At the time the settlement received final approval from the Circuit Court of Mobile County, Alabama in January 2024, the IMP Companies had earned *no money* from commercializing their technologies—which the Falkners well knew. Yet, just a few months later, the Falkners filed this action, contending that IMP had breached the Settlement Agreement, and that the other Defendants had tortiously interfered with the same, by failing to pay the Falkners unspecified amounts the Falkners claim they are owed pursuant to the Earnout Right.

The Falkners, however, have not plausibly alleged—and cannot in good faith allege—that they are currently owed *any* money under the Earnout Right (or otherwise under the Settlement Agreement). To the contrary, the Falkners have not alleged—and cannot in good faith allege—that the *millions of dollars of payments* that must first be made to the investors in the IMP Companies before the Earnout Right even kicks in have been, could have been, or should have been made. Without that allegation, the Falkners cannot adequately allege any entitlement to payment under the Settlement Agreement. And because the Falkners have no entitlement to payment, they have failed to allege either a breach of or interference with the Settlement Agreement.

3

The Falkners cannot escape this fundamental defect by contending, falsely, that IMP and InnoMed Seven are allowing other Defendants, including PGF, to utilize an InnoMed Seven patent without compensation to InnoMed Seven or IMP—and thereby purportedly keeping the Falkners' Earnout Right from ever vesting. As an initial matter, in the Settlement Agreement, the Falkners explicitly gave up any "rights of any kind to compel IMP or the InnoMeds to take any action whatsoever," including in connection with commercializing or enforcing any intellectual property held by those entities.

In any event, the Falkners have not plausibly alleged—and cannot plausibly allege—that the InnoMed Seven patents are being used by PGF, the other Defendants, or anyone else. The Falkners contend that PGF and other Defendants are infringing upon a "method patent" held by InnoMed Seven, but that allegation is refuted by the method patent itself, which is U.S. Patent No. 11,478,274 B2 (the "'274 Patent," attached hereto as **Exhibit 2**).[2] While the Falkners allege that the '274 Patent covers an "endometrial abrasion" procedure that is used "to substantially increase a female's chance of getting pregnant" (Compl. (Doc. 1-2) ¶ 17), the '274

---

[2] In addition to the '274 Patent, InnoMed Seven also holds a "kit" patent, generally covering, among other things, a kit of medical devices for use in a method of intrauterine insemination. *See* U.S. Patent No. 11,883,073 B2, *available at* https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/11883073?requestToken=eyJzdWIiOiJiM2IzZjI2MC05NTk4LTQ1YzItYTZjNi1mOGVmOTE0MjE5Y2MiLCJ2ZXIiOiI0ZTE4NzFkNy00ZThhLTQyNzMtYjE0ZC03MDllMjZkOTEzMGEiLCJleHAiOjB9 (last accessed on March 12, 2025). The Falkners do not allege that the kit patent is being used.

4

Patent, in fact, covers a *nine-step* system and method of treating infertility via intrauterine insemination. While an endometrial abrasion procedure is one of those nine steps (but only if conducted according to the specific parameters of the '274 Patent), the '274 Patent does not cover endometrial abrasion procedures in isolation. Instead, *all nine steps* of the '274 Patent must be practiced to infringe upon that patent. The Falkners have not alleged—and cannot in good faith allege—that PGF, any other Defendant, or any other party is practicing the nine-step method covered by InnoMed Seven's method patent. Thus, the Falkners have not alleged that any income is being earned from practicing InnoMed Seven's method patent.

Accordingly, the Complaint fails to state a claim upon which relief can be granted. The Court should dismiss the Complaint in its entirety.

## BACKGROUND

This action relates to a court-approved class action settlement of two entirely separate actions: *Plessala, et al. v. Falkner, et al.*, Civil Action No. 2022-901579 (Cir. Ct. of Mobile County, Ala.) (the "Plessala Action"); and *Murphy, et al. v. Falkner, et al.*, Civil Action No. CV-2022-901720 (Cir. Ct. of Mobile County, Ala.) (the "Murphy Action"). (Compl. (Doc. 1-2) ¶¶ 12–13). Both the Plessala and Murphy Actions arose from allegations of fraud and egregious breaches of duty committed by the Falkners in connection with their prior management and ownership of the InnoMed Companies. *See* Plessala Action Compl., attached as

**Exhibit 3**; Murphy Action Compl., attached as **Exhibit 4**.[3] Over the course of approximately five years, the Falkners raised more than $10 million of investor moneys, ostensibly to fund development of various medical device technologies of the IMP Companies. *See In the Matter of: Peter Tedwynn Falkner & Carla Falkner*, Administrative Order No. CD-2022-0020 ¶ 13 (Ala. Securities Commission) (the "Cease and Desist" order attached as **Exhibit 5**).[4] Rather than use those investor funds for their intended purposes, the Falkners were alleged to have pocketed roughly half, paying themselves millions in salaries and using investor money to fund their extravagant lifestyles. Ex. 3 ¶¶ 2, 42–51, 53–54, 92–93, 100, 109–11, 115–16; Ex. 4 ¶¶ 42–45, 59, 86–90, 185–86, 192, 195–96, 202.

After the Falkners misconduct came to light, the Falkners were censured by the Alabama Securities Commission, ordered to "immediately **CEASE AND DESIST** from further offers or sales of any security into, within or from the state of Alabama." Ex. 5 at 6 (emphasis in original). In addition, the Plessala and Murphy

---

[3] The Court may take judicial notice of the complaints filed in the Murphy and Plessala Actions, which are not being offered for the truth of the allegations therein. *Howell v. State Farm Mutual Automobile Insurance Co.*, 2025 WL 487226, at *2 (S.D. Ala. Feb. 12, 2025) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.") (citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015)).

[4] The Court may take judicial notice of the Cease and Desist Order in considering this motion to dismiss. *Lowe v. Pettway*, 665 F. Supp. 3d 1313, 1330 n.13 (N.D. Ala. 2023) (allowing for public records to be judicially noticed).

Actions commenced, the latter brought by a group of investors in certain of the InnoMeds. Ex. 1 ¶ 1–4; Ex. 2 ¶¶ 28–37.

Ultimately, the Plessala and Murphy Actions were resolved by a class action settlement entered into on November 8, 2023. *See* Ex. 1 at 1.[5] In the Settlement Agreement, the Falkners relinquished all of their control of and interest in the IMP Companies, as well as their control of or interest in any intellectual property held or controlled by the IMP Companies. *Id*. ¶¶ 2, 4–5. In return, IMP agreed to provide the Falkners with an "Earnout Right" that allowed the Falkners to receive a portion of distributions made to the IMP Companies' owners and investors if certain "Triggering Events" occurred, including the sale of the IMP Companies or the payment by the IMP Companies of "distributions of cash … from the commercialization of" those companies' intellectual property. *Id.* ¶ 3(a). Importantly, the "Earnout Right" only kicked in after a "Floor" was met, defined as "repayment of *all* capital amounts invested or contributed by any investor, member, or owner of IMP and/or the InnoMeds," plus "an additional return of 10% annually." *Id*. ¶¶ 3(a), 3(b) (emphasis added). In other words, the Falkners will not receive *any* payment

---

[5] Although not attached to the Complaint, the Court may consider the Settlement Agreement because it is incorporated by reference in the Complaint and central to the Falkners' breach of contract and tortious interference with contract claims. *See Datum Software, Inc. v. Citizant, Inc.*, 2023 WL 5038854 (M.D. Ala. July 6, 2023) (allowing consideration of the agreement because it is incorporated by reference in the complaint and essential to the breach of contract claim); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) (same).

under the Earnout Right unless and until the millions invested by the IMP Companies' investors have been repaid, in full, with a 10% annual return. In addition, the Falkners also explicitly agreed that notwithstanding their Earnout Right, they had "no rights of any kind to compel IMP or the InnoMeds to take any action whatsoever, including (without limitation) to cause a Triggering Event to occur, to sell IMP or the InnoMeds, to otherwise commercialize the Existing Intellectual Property, or to make any distributions to members of IMP or the InnoMeds." *Id.* ¶ 3(c).

The settlement received final court approval on January 12, 2024. Just three months later, this action was filed in Alabama state court. (Doc. 1-1 at 15). In the Complaint, the Falkners allege that IMP and/or InnoMed Seven have allowed certain Defendants (including PGF) to infringe upon "a method patent for a procedure that utilizes Endometrial Abrasion to substantially increase a female's chance of getting pregnant" (*i.e.*, the '274 Patent), "without fair compensation" to IMP or InnoMed Seven. (Compl. (Doc. 1-2) ¶¶ 17–18). As a result, according to the Falkners, the Settlement Agreement has been breached because the Falkners have been "denie[d] … the compensation that they are entitled to under the Settlement Agreement." *Id.* ¶¶ 18, 21, 24. The Falkners assert a claim for breach of the Settlement Agreement against IMP. *Id.* ¶¶ 21–22 (Count I). They also assert a claim for tortious interference

8

with contract against the other Defendants in the action, including InnoMed Seven, PGF, and the Plessalas. *Id*. ¶¶ 18, 23–26 (Count II).

Importantly, however, the Falkners do not allege that any Triggering Event required for their Earnout Right to accrue has occurred. Nor do they allege that the Earnout Right's Floor has been, should have been, or could have been met. Indeed, there are no allegations at all about how much the IMP Companies could or should have earned from the alleged commercialization of the '274 Patent (or any other InnoMed patent), let alone plausible allegations that millions of dollars in profit could or should have been earned and distributed to the IMP Companies' investors.

In addition, although the Falkners claim that the '274 Patent is being practiced or used by certain Defendants, they significantly misstate the scope of that patent. While the Falkners claim the '274 Patent covers an endometrial abrasion procedure used to "increase a female's chance of getting pregnant" (*id.* ¶ 17), in reality, the '274 Patent does not purport to cover the endometrial abrasion procedure in isolation. *See* Ex. 2 at 31-32.[6] Instead, the '274 Patent covers a nine-step method for intrauterine insemination. *See id*. (claiming a nine-step method for intrauterine insemination). While "making an abrasion on an endometrial lining of a uterus" is

---

[6] The method patent can be considered in this Motion because it is incorporated by reference in the Complaint and because courts can take judicial notice of United States patents. *Nationwide Van Lines, Inc. v. Transworld Movers Inc.*, 853 F. App'x 604, 606 (11th Cir. 2021) (allowing "judicial notice of a public record from the registry of the United States Patent and Trademark office")

one of the nine steps, there are at least eight others, including: (1) "self-monitoring of a menstrual cycle"; (2) "predicting the timing of ovulation"; (3) "preparing sperm for insemination during ovulation"; (4) "guiding an intrauterine insemination catheter accompanied by a cervical lug into the patient"; (5) "positioning the cervical plug at an external os of the patient"; (6) "depositing a semen sample into a uterine cavity or a cervical canal"; (7) "removing the catheter from the patient while using a positioning tool to hold the cervical plug in place"; and (8) "leaving the cervical plug in place for a predetermined time period." *Id.* at 31. The Falkners do not allege—and cannot in good faith allege—that any Defendant is practicing all of the steps in the method claimed by the '274 Patent, let alone in the specific sequence and according to the specific parameters covered by the '274 Patent.

## **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss on the grounds that a complaint's allegations fail to state a claim upon which relief can be granted. In evaluating a motion to dismiss, a court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The facts contained in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (quoting 5 C. Wright, A Miller, et al., *Fed. Prac. & Proc. Civ.* § 1216, pp. 233–34 (3d ed. 2004)). Further, courts should not accept as true allegations that are contradicted by documents or exhibits incorporated by reference in the complaint. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (permitting courts to consider documents incorporated by reference in the complaint at the 12(b)(6) stage).

## ARGUMENT

### I. The Falkners Have Failed to State a Claim for Breach of Contract against IMP.

The Falkners have not plausibly or adequately alleged that IMP has breached the Settlement Agreement. Under Alabama law, the elements for a breach of contract claim "'are (1) a valid contract binding the parties; (2) the plaintiffs' performance

under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1368–69 (S.D. Ala. 2013) (quoting *Shaffer v. Regions Financial Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). The Falkners have not plausibly alleged the third or fourth elements of their breach claim: IMP's nonperformance or resulting damages.

      A.      **The Falkners have not plausibly alleged a breach of the Settlement Agreement.**

The Falkners' theory of breach is that IMP has allowed certain Defendants, including PGF, to use the '274 Patent "without fair compensation" to IMP (or InnoMed Seven) and thereby has avoided paying to the Falkners "the proceeds" to which the Falkners claim to be "entitled … under the Settlement Agreement" (Compl. (Doc. 1-2) ¶¶ 21–22). For at least three reasons, the Falkners have failed to state a claim for breach of contract.

*First*, in the Settlement Agreement, the Falkners relinquished their interest in and control of the IMP Companies (Ex. 1 ¶¶ 2, 4, 5) and expressly disclaimed "any rights of any kind to compel IMP or the InnoMeds to take any action whatsoever," including to "commercialize the Existing Intellectual Property" or "to make any distributions to members of IMP or the InnoMeds" (*id*. ¶ 3(c)). Given this disclaimer, the Falkners are legally barred from challenging any act taken by the IMP Companies vis-à-vis their intellectual property, including, but not limited to, allegedly allowing "the InnoMed[] patents" to be used "without fair compensation."

12

*Id.* Simply put, the Falkners have no standing to challenge any decision made by the IMP Companies regarding their intellectual property and the Falkners' breach of contract claim should be dismissed for this reason alone.

*Second*, the crux of the Falkners' breach of contract claim is that IMP has breached the Settlement Agreement by failing to pay to the Falkners "the proceeds" under the Settlement Agreement to which the Falkners claim to be entitled. (Compl. (Doc. 1-2) ¶ 22). But the Falkners have not plausibly alleged any entitlement to any "proceeds" under the Settlement Agreement. As explained above, the Falkners' limited Earnout Right under the Settlement Agreement to distributions made to the owners of the IMP Companies *only* kicks in (1) if certain Triggering Events occur *and* (2) *after* the "Floor" has been met, defined as repayment of *millions of dollars* of investment, plus a 10% annual return. *See supra* at 7–8; Ex. 1 ¶¶ 3(a), 3(b). But the Falkners have not alleged the occurrence of *any* Triggering Event. Nor have the Falkners alleged (nor could they plausibly or in good faith allege) that the "Floor" has been satisfied, which would require *millions of dollars* in profit from the commercialization of the IMP Companies' intellectual property. Without these allegations, the Falkners' theory of breach of contract collapses, because they have not alleged any entitlement to payment. *See Morton v. Automobile Ins. Co. of Hartford, Conn.*, 102 F. Supp. 3d 1248, 1261 (N.D. Ala. 2015) (failing to satisfy a necessary precondition prevents plaintiff from sustaining a breach of contract claim).

*Third*, the Falkners' breach of contract claim also depends upon their allegation that IMP and/or InnoMed Seven have allowed other companies, including PGF, to utilize the '274 Patent "without fair compensation." But the Falkners have not plausibly or adequately alleged that the '274 Patent (or any other patent held by the IMP Companies) is being used without fair compensation. The only specific patent identified in the Complaint is the '274 Patent, which is the "method patent" owned by InnoMed Seven that the Falkners claim covers "a procedure that utilizes Endometrial Abrasion to substantially increase a female's chance of getting pregnant." Compl. (Doc. 1-2) ¶ 17; Ex. 2. As shown above, however, the '274 Patent does not cover the endometrial abrasion procedure in isolation. *See supra* at 9–10. Nor could it, given that procedure's longstanding use. Ex. 2 ¶ 1 ("Currently, there are many tools that are utilized in their individual capacity to increase the likelihood of a successful pregnancy . . . but heretofore, those tools have not yet been combined in a logical manner."). Instead, the '274 Patent covers a complex system for intrauterine insemination, which includes endometrial abrasion (conducted per the parameters of the '274 Patent), as just one step among at least nine. *See supra* at 9–10 & Ex. 2 at 31–32. The Falkners do not and cannot allege that all of the steps of the method claimed by the '274 Patent are being practiced in the manner claimed by the '274 Patent, which means the Falkners have not alleged that the '274 Patent is being practiced or infringed upon. *Limelight Networks, Inc. v. Akamai Techs., Inc.*,

572 U.S. 915, 921 (2014) ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out."). And because the Falkners' breach of contract claim depends upon their allegation that IMP and/or InnoMed Seven are allowing the infringement of the '274 Patent without compensation, the Falkners' breach of contract claim necessarily fails.

    **B.    The Falkners have not plausibly alleged any damages from any alleged breach of contract.**

The Falkners have also failed to allege the fourth element of a breach of contract claim: damages resulting from the alleged breach. *Wallace*, 974 F. Supp. 2d at 1368–69. Although the Falkners contend that "[a]s a proximate result" of IMP's alleged breach of the Settlement Agreement, the Falkners "have been caused to suffer damage," the only alleged damage they identify is the purported failure by IMP to pay them under their "Earnout Right." (Compl. (Doc. 1-2) ¶ 22 ("Plaintiffs have been caused to suffer damage, including but not limited to the proceeds that Plaintiffs are entitled to under the Settlement Agreement.")). But for all of the reasons just discussed, the Falkners have not plausibly alleged entitlement to *any* payments under the Earnout Right. Most significantly, they have not alleged the existence of a "Triggering Event" under the Settlement Agreement or satisfaction of the Earnout Right's "Floor." Accordingly, the Falkners' breach claim should be dismissed for failing to allege any "resulting damages." *Cajun Steamer Ventures, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1341 (N.D. Ala. 2019) (requiring dismissal

of a breach of contract claim for failure "to allege any damages" when plaintiff merely stated that they had "been injured by Defendant's actions"); *Shaw v. One West Bank, FSB*, 683 F. App'x 850, 853 (11th Cir. 2017) (dismissing a breach of contract claim under Georgia law for failure to plead any damages).

II. **The Falkners Have Failed to State a Claim for Tortious Interference with a Contract Against InnoMed Seven, PGF, or the Plessalas.**

For similar reasons, the Falkners have failed to state a claim for tortious interference with contract. The Falkners contend that all of the remaining Defendants in this case, including the remaining Moving Defendants, the Plessalas, PGF, and InnoMed Seven, have tortiously interfered with the Settlement Agreement. Under Alabama law, the elements of a tortious interference claim are: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Terry v. RCHP-Florence, LLC*, 671 F. Supp. 3d 1321, 1325 (N.D. Ala. 2023) (quoting *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009)). Where, as here, a tortious interference claim is predicated on interference with an existing contractual relationship, the plaintiff must at least allege a breach of or interference with that contract. *See Whatley v. Ohio National Life Insurance Company*, 851 F. App'x 910, 918 (11th Cir. 2021) ("[T]o satisfy the intentional interference element, the defendant must actively procure the breach of a separate contract."); *see also BellSouth Mobility, Inc. v. Cellulin, Inc.*, 814 So. 2d 203, 211

16

(Ala. 2001) (bringing a tortious interference claim for the termination of the relevant contract); *Pakruda v. Cross*, 669 So. 2d 907, 908–10 (Ala. Civ. App. 1995) (finding evidence of intentional interference sufficient when managers induced students to breach their contracts).

The Falkners' tortious interference claim should be dismissed as to all Defendants for the same reasons as their breach of contract claim: that is, the Falkners have not plausibly alleged a breach of or interference with the Settlement Agreement, and therefore have failed to allege the "intentional interference" element of their tortious interference claim. *See supra* at Argument § I.A. In addition, as explained above, the Falkners have also not alleged any resulting damage. *See supra* at Argument § I.B. For both reasons, the Falkners have failed to adequately allege tortious interference with contract. *See K-Mart, Inc. v. Stewart*, 29 So. 3d 887, 892 (Ala. Civ. App. 2009) (finding that the trial court erred in failing to dismiss an intentional interference claim that did not allege interference); *Barber v. Business Products Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996) (finding no claim for intentional interference when there was no evidence of active interference); *see also Automotive Alignment & Body Service, Inc. v. State Farm Mutual Automobile Insurance Co.*, 953 F.3d 707, 733 (11th Cir. 2020) (dismissing tortious interference claims for failure to allege damages).

In addition, the Falkners' tortious interference claim should be dismissed as to the Plessalas because those Defendants are not "strangers" to the Settlement Agreement: they were parties to it. *See* Ex. 1 at 1–2. "[A] party to a contract cannot, as a matter of law, be liable for tortious interference with the contract." *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003) (quoting *Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987)).

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant this motion and enter an order dismissing this case with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Date: March 12, 2025

Respectfully submitted,

By: /s/ *Zachary A. Madonia*
Zachary A. Madonia
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Tel.: (205) 521-8013
zmadonia@bradley.com

Brian P. McCarthy
McDowell Knight Roedder & Sledge LLC
11 North Water Street, Suite 13290
Mobile, AL 36602
Tel.: (251) 431-8806
bmccarthy@mcdowellknight.com

*Attorneys for Defendants Plessala Gynecology & Fertility, PLLC, InnoMed Seven LLC, Innovative Medicine Partners, LLC, Kirby Plessala, and Deneen Plessala*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on March 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused a true and correct copy to be served on all counsel of record.

*/s/ Zachary A. Madonia*
Zachary A. Madonia
