IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PETER FALKNER and<br>CARLA FALKNER,<br><br>    Plaintiffs,<br><br>v.<br><br>OVUM MEDICAL, LLC et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    25-CV-90-KD-MU<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

Plaintiffs Peter Falkner and Carla Falkner (the "Falkners") filed a Motion to Remand and for Attorney's Fees. (Docs. 27, 28). The motion was referred to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72. Having considered the notice of removal (Doc. 1), motion to remand (Docs. 27, 28), and response in opposition to motion to remand (Doc. 32)[1], and for the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the motion to remand and request for attorney's fees be **DENIED**.

### I. Background

The Falkners originally filed this action on April 22, 2024, in the Circuit Court of Mobile County, Alabama, against Defendants Ovum Medical, LLC, Kirby Plessala, Deneen Plessala, Innovative Medicine Partners, LLC ("IMP"), and Alice Crisci, alleging state law claims of breach of contract and tortious interference with contractual relations.

---

[1] Plaintiff did not file a reply brief. Defendants have also filed a Motion to Dismiss (Doc. 10, 11), and the briefing on that motion has been stayed pending a ruling on the instant motion to remand. (Doc. 31).

(Doc. 1-1, PageID.15-20). The Falkners filed a First Amended Complaint on April 23, 2024. (Doc. 1-1, PageID.53-58). Plaintiffs filed a Second Amended Complaint (the "Complaint") on February 3, 2025, to add MedAnswers, Inc., Ovum Health, Inc., Plessala Gynecology & Fertility, PLLC ("PGF"), Avona Fertility, Inc., and InnoMed Seven, LLC as defendants. (Doc.1-2). The factual allegations are the same as those alleged in Plaintiffs' First Amended Complaint. Defendants Plessala Gynecology and InnoMed Seven filed the Notice of Removal on March 5, 2025. (Doc. 1).

This action relates to a court-approved class action settlement of two separate actions: *Plessala, et al. v. Falkner, et al.,* Civil Action No. 2022-901579 (Cir. Ct. of Mobile County, Ala.) (the "Plessala Action"); and *Murphy, et al. v. Falkner, et al.*, Civil Action No. CV-2022-901720 (Cir. Ct. of Mobile County, Ala.) (the "Murphy Action"). The Plessala and Murphy Actions were resolved by a class action settlement in which the Falkners relinquished all control of and interest in the IMP Companies[2], as well as their control of or interest in any intellectual property held or controlled by the IMP Companies. (Doc. 10-1, ¶¶ 2, 4–5). In return, IMP agreed to provide the Falkners with an "Earnout Right" that allowed the Falkners to receive a portion of distributions made to the IMP Companies' owners and investors if certain "Triggering Events" occurred, and after a "Floor" was met - defined as repayment of all amounts invested in or contributed to the IMP Companies, plus a ten percent annual return. (Doc. 10-1, ¶¶ 3(a), 3(b)).

---

[2] The "IMP Companies" include IMP as well as "the InnoMeds", who are defined in the class action Stipulation of Settlement and the Complaint to include InnoMed One, LLC, InnoMed Five, LLC, InnoMed Seven, LLC, and InnoMed Eight, LLC. (Doc. 10-1, PageID.329; Doc. 1-2, ¶ 11). The parties to the class action Settlement Agreement who are also parties in this action include IMP, Kirby Plessala, Deneen Plessala, Peter Falkner, Carla Falkner, and InnoMed Seven. (Doc. 10-1).

In their Complaint, the Falkners allege that IMP and InnoMed Seven have allowed certain Defendants to infringe upon "a method patent for a procedure that utilizes Endometrial Abrasion to substantially increase a female's chance of getting pregnant without fair compensation" to IMP or InnoMed Seven. (Doc. 1-2, ¶¶ 17–18).[3] Specifically, the Falkners allege:

> Ovum, Ovum Health, MedAnswers, Avona, Plessala Gynecology, InnoMed Seven, the Plessala's and Crisi (collectively "the Ovum Defendants") have been using and are using the InnoMed Seven patents and possibly others owned by IMP and/or the InnoMeds, to make money without fair compensation to IMP, which in turn, denies the Plaintiffs the compensation that they are entitled to under the Settlement Agreement. IMP is complicit in this arrangement that allows the Ovum Defendants to use the InnoMed patent without receiving fair compensation.

(Doc. 1-2, ¶ 18). The Falkners assert a claim for breach of the Settlement Agreement against IMP. (Doc. 1-2, ¶¶ 21–22) (Count One). They also assert a claim for tortious interference with contractual relations against the Ovum Defendants. (Doc. 1-2, ¶¶ 24–26) (Count Two).

## II. Legal Analysis

The issue before the Court is whether it has subject matter jurisdiction over this case. Defendants timely removed this case to federal court on the grounds that the Complaint stated a federal question pursuant to 28 U.S.C. § 1331 and § 1338. (Doc. 1). Section 1338 grants federal district courts original jurisdiction of any civil action arising under any Act of Congress relating to patents. 28 U.S.C. § 1338. Because diversity of citizenship is not present, jurisdiction lies only if this case arises under federal law. A case may arise under federal law in two ways. "Most directly, a case arises under federal law

---

[3] As explained in detail in the pending motion to dismiss, that method patent is U.S. Patent No. 11,478,274 (the "'274 Patent") and is held by InnoMed Seven. (Docs. 10, 10-2).

when federal law creates the cause of action asserted." *Gunn v. Minton,* 568 U.S. 251, 257 (2013). In addition, the Supreme Court has recognized a "special and small category of cases" in which "arising under" jurisdiction lies even though the case involves only claims based on state law. *Gunn*, 568 U.S. at 257.

Here, the Falkners acknowledge they have no ownership interest in the patent or patents at issue, and, therefore, there is no federal claim presented for patent infringement. Instead, the Falkners have raised state law claims for breach of contract and tortious interference with contractual relations. Consequently, the central question becomes whether this matter falls within the second category of "arising under" jurisdiction. The Supreme Court has set forth the following inquiry to determine whether a particular case falls into the "special and small category of cases" for which "arising under" jurisdiction lies for state law claims:

> Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn*, 568 U.S. at 258 (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313–14 (2005)). Under this test, a cause of action created by state law may nevertheless "arise under" federal patent law within the meaning of 28 U.S.C. § 1338(a) if it involves a patent law issue that meets these four requirements. *NeuroRepair, Inc. v. The Nath L. Grp.*, 781 F.3d 1340, 1344 (Fed. Cir. 2015)

4

### A. Necessarily Raised

The first requirement of *Gunn's* four-part test asks whether a federal issue is "necessarily raised." *Gunn*, 568 U.S. at 259. For the Falkners' state law claims, "a patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims." *NeuroRepair*, 781 F.3d at 1344. The Falkners' only argument that patent issues are not "necessarily raised" by their claims is that they have not asserted, and do not have standing to assert, a claim for patent infringement. However, there is no requirement that a plaintiff have asserted or have standing to assert a claim for patent infringement in order for patent law issues to be "necessarily raised" by the plaintiff's state law claims. *See Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1285 (Fed. Cir. 2007) (collecting cases where the Federal Circuit found federal question jurisdiction over state law claims requiring proof of patent infringement). Instead, a state law claim "necessarily raises" federal law issues if the resolution of the state law claim "depends on" resolution of the federal issue. *See Immunocept*, 504 F.3d at 1284. Put differently, a state law claim necessarily raises patent issues where the plaintiff cannot prevail on his or her claim without adjudicating those patent issues. *See id*. at 1284-85; *see also AEP Excluded Assetco, LLC v. Bellanergy, LLC,* No. 4:23-CV-3638, 2024 WL 385695, at *4 (S.D. Tex. Feb. 1, 2024) (finding a federal patent issue "necessarily raised" because recovery required proving patent infringement).

Both of the Falkners' claims depend on them proving that Defendants are engaging in conduct that infringes upon InnoMed Seven's '274 Patent. The Falkners' theory of liability for both claims is that IMP is avoiding the Falkners' Earnout Right by allowing third parties to practice the '274 Patent without compensation to InnoMed Seven or IMP. (Doc.

5

1-2, ¶¶ 14–19). To resolve that allegation necessarily requires, among other things, resolution of the scope of the '274 Patent, including whether that patent covers endometrial abrasion procedures in isolation. It also requires that the Court determine whether the '274 Patent is being infringed upon. (Doc. 1-2 ¶ 18). As such, the Falkners' claims necessarily raise federal issues.

### B. Actually Disputed

The Falkners do not dispute that the federal patent law issues raised by their claims are "actually disputed," nor could they - as explained in the notice of removal and motion to dismiss, there is a genuine dispute as to the scope of the InnoMed Seven method patent. (Doc. 1 ¶ 15; Doc. 10, PageID.317-18). Defendants contend that they did not infringe upon a valid patent, while the Falkners argue that they did. Accordingly, the federal patent issue is "actually disputed." *Gunn*, 568 U.S. at 259.

### C. Substantial

In order for an issue to be considered "substantial," its resolution must be important "to the federal system as a whole." *Gunn*, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue." *Id*. (quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "The Supreme Court has described three nonexclusive factors that may help to inform the substantiality inquiry, none of which is necessarily controlling." *NeuroRepair, Inc.*, 781 F.3d at 1345 (referencing *MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir.2013)). A "substantial federal issue is more likely to be present" if:

(a) a pure issue of [federal] law is dispositive of the case[;]

>  (b) the court's resolution of the issue will control numerous other cases[;] and
>  (c) [t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action.

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1364 (Fed. Cir. 2019) (alterations in original) (citations omitted) (internal quotation marks omitted).

The first factor favors removal because the question of whether the scope of the '274 Patent covers endometrial abrasion procedures in isolation is a pure question of federal law that could be dispositive of the case. *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1346 (Fed. Cir. 1999) (questions involving the construction and scope of a patent are questions of law). If, as Defendants have argued in their pending motion to dismiss, the Court concludes that the Falkners have mischaracterized the scope of the '274 Patent and determines that PGF, Ovum, and other Defendants cannot violate the *eight-step method* claimed by the '274 Patent merely by conducting endometrial abrasion procedures (one of the eight steps), then the Falkners cannot prevail on either their breach of contract or tortious interference claims. In other words, the Falkners' theory of liability unravels if the scope of the InnoMed Seven method patent does not cover endometrial abrasion in isolation - and whether the '274 Patent covers endometrial abrasion in isolation is a pure question of federal law that may prove dispositive of their claims.

For this reason, this case is distinguishable from *Inspired Development Group*. There, unlike here, the plaintiff "could [have] prevail[ed] on its unjust enrichment claim *without* showing [the defendant's] products actually infringed." *Inspired Dev. Grp.*, 983 F.3d at 1364 (emphasis added). Here, by contrast, the Falkners can only prevail if they prove that the InnoMed Seven method patent is being practiced by Alice Crisci, PGF,

Ovum, or other Defendants without compensation to InnoMed Seven and IMP. (Doc. 1-2 ¶ 18). And that question necessarily involves a pure question of law as to the scope of the InnoMed Seven method patent and whether that patent covers an endometrial abrasion procedure conducted in isolation. *See WMS Gaming*, 184 F.3d at 1346. Therefore, the first factor weighs in favor of finding a substantial federal issue.

The second factor - whether the court's resolution of the federal issue will control other cases - also favors removal. While the Falkners are correct that courts, including the Federal Circuit, have held that "a state court determination of invalidity" of a patent does not "control" later federal court cases on whether that same patent has been infringed, this case is not about the validity of the '274 Patent or any other patent. (Doc. 28, PageID.523 (citing *Inspired Dev. Grp.*, 983 F.3d at 1365)). Nor is this "a fact-bound and situation-specific" dispute, the resolution of which will only be narrowly felt by the specific parties to the case. *Gunn*, 568 U.S. at 263. Further, this case is distinguishable from *MDS*, where the patent issues were described as both "highly specialized" and "niche", and, therefore, unlikely to have any future impact beyond the parties to that case. *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 842 (11th Cir. 2013). In contrast, the Falkners have alleged that the '274 Patent broadly covers a widely used fertility treatment called endometrial abrasion, which involves making an abrasion or scratch on the uterine lining to potentially increase the likelihood of embryonic implantation and improve fertility outcomes. (Doc. 32, PageID.534; Doc. 1-2, ¶¶ 17-18). Defendants explain and cite to medical sources which indicate that this procedure has been used for decades in conjunction with fertility treatments, including intrauterine

insemination and in vitro fertilization, and has been performed by fertility specialists throughout the country. (Doc. 32, PageID.534).

A state court's decision on the scope of the '274 Patent will, of course, impact the parties in this action by resolving whether any Defendants have engaged in conduct that infringes the '274 Patent. But any decision could very well impact other cases involving non-parties to this litigation. For example, the Falkners have alleged that Alice Crisci, Ovum, Ovum Health, MedAnswers, Avona, and PGF - all non-parties to the Settlement Agreement - have tortiously interfered with the Settlement Agreement by performing endometrial abrasion procedures without compensation to InnoMed Seven or IMP. If the Falkners prevail on their theory that an endometrial abrasion procedure, in isolation, is covered by the '274 Patent, then they may attempt to use that decision against other providers who also use endometrial abrasion to treat fertility patients without compensation to InnoMed Seven and IMP.

Where patent issues "present this possibility of separate actions" against separate parties, courts have found them to be "substantial." *See AEP Excluded Assetco, LLC*, 2024 WL 385695, at *5; *Jang v. Bos. Sci. Corp.*, 767 F.3d 1334, 1337-38 (Fed. Cir. 2014) (describing disputes that could lead to additional suits "with the potential of conflicting rulings" as those "alleging infringement by others"); *Point Conversions, LLC v. Omkar Hotels, Inc.*, 321 So. 3d 326, 332-33 (Fla. Dist. Ct. App. 2021) (finding exclusive federal patent jurisdiction for claims being asserted against entities that are not parties to the agreement); *accord Inspired Dev. Grp.*, 938 F.3d at 1368, n.8 (noting that a lawsuit pleading claims against a party the plaintiff does not have an existing relationship with raises "greater concerns for the federal system" and "the claim would look like little more

than a patent infringement claim against a third-party infringer pled in disguise to avoid federal jurisdiction"). This is particularly so where the federal issues could result "in inconsistent judgments between state and federal courts," *Forrester Environmental Services, Inc. v. Wheelabrator Technologies, Inc.*, 715 F.3d 1329, 1334 (Fed. Cir. 2013). For these reasons, the second factor weighs in favor of finding a substantial federal issue.

For similar reasons, the third *NeuroRepair* factor also favors removal. While the "government interest in having any single case of patent infringement heard" in a federal forum is generally limited, *Inspired Dev. Grp.*, 938 F.3d at 1368-69, the government has a strong interest in avoiding "the potential of conflicting rulings" as to the validity, scope, and infringement of a patent, *Jang*, 767 F.3d at 1337-38. This is especially true where, as here, the patent issues are broad and could potentially impact a widely used procedure. *See Maxchief Investments Ltd. V. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1140 n.3 (Fed. Cir. 2018) ("[B]ecause a tortious interference claim like the one presented here involves determining infringement and validity, this is a situation in which there is potential for 'inconsistent judgments between state and federal courts'" (quoting *Forrester*, 715 F.3d at 1334)). For these reasons, the third factor weighs in favor of finding a substantial federal issue.

### D. Federal-State Balance

The final requirement of *Gunn's* four-part test "typically tracks the third; a substantial federal issue is unlikely to disrupt the federal-state balance, while an insubstantial one impermissibly treads upon matters best left to the states. *See, e.g., Gunn*, 568 at 264." *AEP Excluded Assetco, LLC*, 2024 WL 385695, at *5. For example, in *MPHJ Tech. Invs.*, the Federal Circuit found that the patent issue was substantial, and

then found that it was capable of resolution in federal court without disrupting the federal-state balance, because "[a]llowing a state court to resolve a patent law preemption question risks 'inconsistent judgments between state and federal courts.'" *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 646 (Fed. Cir. 2015) (quoting *Jang*, 767 F.3d at 1337)." Here, "given that a substantial, forward-looking patent issue" underlies the Falkners' claims, "keeping this case in federal court will not risk disrupting states' adjudicative role." *AEP Excluded Assetco, LLC*, 2024 WL 385695, at *5. The Court finds the fourth *Gunn* factor is satisfied.

### E. Fee Request

As a matter of law, fees and costs can only be awarded if a removal was "objectively" unreasonable. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Removal was proper in this case, so the Court recommends denial of the request to award fees.

### CONCLUSION

For the reasons stated above, the Court finds that the Complaint states a federal question pursuant to 28 U.S.C. § 1331 and § 1338 and was properly removed to this Court. Accordingly, the Court **RECOMMENDS** that the motion to remand and the request for attorney's fees be **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);

S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **11th** day of **July, 2025**.

s/P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE