IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PETER FALKNER and<br>CARLA FALKNER, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   25-CV-90-KD-MU<br>)<br>) |
| OVUM MEDICAL, LLC et al., | )<br>) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Defendants Innovative Medicine Partners, LLC ("IMP"), InnoMed Seven, LLC ("InnoMed Seven"), Kirby Plessala and Deneen Plessala (together, the "Plessalas"), and Plessala Gynecology & Fertility, PLLC ("PGF" and, collectively, the "Plessala Defendants" or the "IMP Defendants") filed a Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim. (Doc. 10). Defendants Alice Crisci, Ovum Medical, LLC ("Ovum"), and MedAnswers, Inc. ("MedAnswers" and, collectively, the "Crisci Defendants") filed a Motion to Dismiss for failure to state a claim or, in the alternative, Motion for Judgment on the Pleadings, adopting the Motion to Dismiss filed by the Plessala Defendants. (Doc. 11). Plaintiffs filed a response to the motions (Doc. 44) and filed a Motion to Strike the Crisci Defendants' Motion to Dismiss (Doc. 45) and a Motion to Strike the exhibits to the Plessala Defendants' Motion to Dismiss (Doc. 46). The motions were referred to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72.  Having considered the motions to dismiss (Docs. 10, 11), Plaintiffs' Response in opposition (Doc. 44), Plaintiffs' motions to strike (Docs.

45, 46), and Defendants' Replies to the motions to dismiss and Responses to the motions to strike (Docs. 47, 48), and for the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** the Court **DENY** the motions to strike and **GRANT** the motions to dismiss.

## I. Background

The Falkners originally filed this action on April 22, 2024 in the Circuit Court of Mobile County, Alabama, against Defendants Ovum Medical, LLC, Kirby Plessala, Deneen Plessala, Innovative Medicine Partners, LLC ("IMP"), and Alice Crisci, alleging state law claims of breach of contract and tortious interference with contractual relations. (Doc. 1-1, PageID.15-20). The Falkners filed a First Amended Complaint on April 23, 2024. (Doc. 1-1, PageID.53-58). Plaintiffs filed a Second Amended Complaint (the "Complaint") on February 3, 2025, to add MedAnswers, Inc., Ovum Health, Inc., Plessala Gynecology & Fertility, PLLC ("PGF"), Avona Fertility, Inc.[1], and InnoMed Seven, LLC as defendants. (Doc.1-2). The factual allegations are the same as those alleged in Plaintiffs' First Amended Complaint. Defendants Plessala Gynecology and InnoMed Seven filed a Notice of Removal on March 5, 2025. (Doc. 1). Plaintiffs filed a Motion to Remand that was denied on August 13, 2025 (Doc. 40), after a finding that the Complaint states a federal question pursuant to 28 U.S.C. § 1331 and § 1338 and was properly removed to this Court. (*See* Doc. 36).

This action relates to a court-approved class action settlement of two separate actions: *Plessala, et al. v. Falkner, et al.,* Civil Action No. 2022-901579 (Cir. Ct. of Mobile County, Ala.) (the "Plessala Action") (Doc. 10-3 - Exhibit 3 - Plessala Action Complaint);

---

[1] Upon *sua sponte* review by the Court, Avona was dismissed for lack of service on December 1, 2025. (Doc. 50).

and *Murphy, et al. v. Falkner, et al.*, Civil Action No. CV-2022-901720 (Cir. Ct. of Mobile County, Ala.) (the "Murphy Action") (Doc. 10-4 - Exhibit 4 - Murphy Action Complaint). Both the Plessala and Murphy Actions arose from allegations of fraud and breaches of duty committed by the Falkners in connection with their prior management and ownership of IMP and several subsidiary "InnoMed" entities. (Docs. 10-3, 10-4). Over the course of approximately five years, the Falkners raised more than $10 million of investor moneys, presumably to fund development of various medical device technologies of IMP and certain InnoMed entities. *See In the Matter of: Peter Tedwynn Falkner & Carla Falkner*, Administrative Order No. CD-2022-0020, ¶ 13 (Ala. Securities Commission) (Doc. 10-5 - Exhibit 5 - ASEC's Cease and Desist Order). Rather than use those investor funds for their intended purposes, the Falkners were alleged to have appropriated roughly half, paying themselves millions in salaries and using investor money to fund their extravagant lifestyles. (Doc. 10-3, Ex. 3 ¶¶ 2, 42–51, 53–54, 92–93, 100, 109–11, 115–16; Doc. 10-4 ¶¶ 42–45, 59, 86–90, 185–86, 192, 195–96, 202).

The Plessala and Murphy Actions were resolved by a class action settlement in which the Falkners relinquished all control of and interest in the IMP Companies[2], as well as their control of or interest in any intellectual property held or controlled by the IMP Companies. (Doc. 10-1, ¶¶ 2, 4–5 - Exhibit 1 – Stipulation of Settlement (the "Settlement Agreement")). In return, IMP agreed to provide the Falkners with an "Earnout Right" that allows the Falkners to receive a portion of distributions made to the IMP Companies'

---

[2] The "IMP Companies" include IMP as well as "the InnoMeds" who are defined in the class action Stipulation of Settlement and the Complaint to include InnoMed One, LLC, InnoMed Five, LLC, InnoMed Seven, LLC, and InnoMed Eight, LLC. (Doc. 10-1, PageID.329; Doc. 1-2, ¶ 11). The parties to the class action Settlement Agreement who are also parties in this action include IMP, Kirby Plessala, Deneen Plessala, Peter Falkner, and Carla Falkner. (Doc. 10-1).

owners and investors if certain "Triggering Events" occur, including the sale of the IMP Companies or the payment by the IMP Companies of "distributions of cash … from the commercialization of" those companies' intellectual property. (Doc. 10-1, ¶3(a)). Importantly, the "Earnout Right" only kicks in after a "Floor" is met, defined as "repayment of *all* capital amounts invested or contributed by any investor, member, or owner of IMP and/or the InnoMeds," plus "an additional return of 10% annually." (Doc. 10-1, ¶¶ 3(a), 3(b)) (emphasis added). In other words, the Falkners will not receive *any* payment under the Earnout Right unless and until the millions invested by the IMP Companies' investors have been repaid, in full, with a 10% annual return. In addition, the Falkners also explicitly agreed that notwithstanding their Earnout Right, they had:

> no rights of any kind to compel IMP or the InnoMeds to take any action whatsoever, including (without limitation) to cause a Triggering Event to occur, to sell IMP or the InnoMeds, to otherwise commercialize the Existing Intellectual Property, or to make any distributions to members of IMP or the InnoMeds.

(Doc. 10-1, ¶ 3(c)).

In their Complaint, The Falkners assert a claim for breach of the Settlement Agreement against IMP. (Doc. 1-2, ¶¶ 21–22) (Count One). They also assert a claim for tortious interference with contractual relations against the Ovum Defendants[3]. (Doc. 1-2, ¶¶ 24–26) (Count Two). Specifically, the Falkners allege that the Ovum Defendants:

> have been using and are using the InnoMed Seven patents and possibly others owned by IMP and/or the InnoMeds, to make money without fair compensation to IMP, which in turn, denies the Plaintiffs the compensation that they are entitled to under the Settlement Agreement. IMP is complicit in this arrangement that allows the Ovum Defendants to use the InnoMed patent without receiving fair compensation.

---

[3] Plaintiffs use the "Ovum Defendants" to refer to all Defendants except IMP. (Doc. 1-2, ¶ 18).*

(Doc. 1-2, ¶18). Plaintiffs state that the patents owned by InnoMed Seven include a method patent for a procedure that utilizes endometrial abrasion to substantially increase a female's chance of getting pregnant. (Doc. 1-2, ¶17).[4] The Falkners also allege that the Ovum Defendants:

> have numerous partners and associated entities that are utilizing the methods, devices and procedures of the InnoMeds' patents to make profit, part of which is not being paid to the Plaintiffs pursuant to the terms of the Settlement Agreement.

(Doc. 1-2, ¶19). Regarding the breach of contract claim, Plaintiffs allege "IMP has breached the terms of the Settlement Agreement by allowing the Ovum Defendants the use of the InnoMed patents without fair compensation in order to avoid compensating the Investors and Plaintiffs." (Doc. 1-2, ¶21). Regarding the tortious interference claim, Plaintiffs allege the Ovum Defendants had actual knowledge of the Settlement Agreement and willfully and intentionally interfered with Plaintiffs' rights under the Settlement Agreement. (Doc. 1-2, ¶24). Plaintiffs allege they have suffered damages, including lost proceeds they are entitled to under the Settlement Agreement as well as mental anguish and emotional distress. (Doc. 1-2, ¶¶22, 25).

### III. Standard of Review

#### A. Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *E.g., Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). "Fed. R.

---

[4] That method patent is U.S. Patent No. 11,478,274 (the "'274 Patent") and is held by InnoMed Seven. (Doc. 10-2 - Exhibit 2 - Plessala Patent).

Civ. P. 8(a)(2) requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation omitted). "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 1289 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). While this "plausibility standard is not akin to a 'probability requirement' at the pleading stage…the standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Id*. (quoting *Twombly*, 550 U.S. at 556).

In determining whether a claim is stated, the court "must accept the factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff." *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017). "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). *Iqbal* "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to

6

an entitlement to relief.'" *Am. Dental Ass'n.*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 679).

"[A] Rule 12(b)(6) motion to dismiss is to be determined only on the facts alleged within the four corners of the complaint and the documents attached to the complaint or directly referred to in the complaint." *Scottsdale Ins. Co. v. ULGM, Inc.,* No. 14-21084-CIV, 2014 WL 11906638, at *1 (S.D. Fla. July 14, 2014)). While the court must usually limit its review and consideration on motion to dismiss to the complaint itself and exhibits attached to it, a "court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

### B. Motion for Judgment on the Pleadings

Pursuant to Rule 12(c), a party may move for judgment on the pleadings, after the pleadings are closed. *Fed. R. Civ. P.* 12(c). The pleadings are "closed" for purposes of Rule 12(c) "when a complaint and answer have been filed." *Lillian B. ex rel. Brown v. Gwinnet Cty. Sch. Dist.,* 631 Fed.Appx. 851, 853 (11th Cir. 2015). The "pleadings" include a complaint, answer, and affirmative defenses. *Fed. R. Civ. P.* 7(a). The purpose of Rule 12(c) is to provide "a means of disposing of cases when…a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings…." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004)) (emphasis in original).

In "determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those

7

facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335. "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* A judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (*see also Equal Emp. Opportunity Comm'n v. Austal USA, LLC*, 389 F. Supp. 3d 1015, 1018 (S.D. Ala. 2019)).

On motion for judgment on the pleadings, the court considers the complaint, answers, and the exhibits thereto. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). The court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. *Fed. R. Civ. P*. 12(d). However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Fed. R. Civ. P*. 10(c). Thus, the court may consider any documents attached to the complaint. The court may also consider documents attached to an answer if the documents are "(1) central to the plaintiff's claim; and (2) undisputed," which "in this context means that the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

In addition, documents attached to a Rule 12(b)(6) or 12(c) motion may also be considered without converting the motion to a motion for summary judgment "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley*, 304 F.3d at 1135 (citation omitted); *see also Brown v. Brock*,169 Fed. Appx. 579, 582 (11th Cir. 2006). A document is "central" to the plaintiff's claim if the "'[plaintiff] unquestionably would have had to offer a copy of the [document] in order to prove the [ ] case.'" *Financial*

8

*Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007) (citation omitted).

## II. Legal Analysis

### A. Motions to Strike

#### 1. Motion to Strike Regarding the Plessala Defendants' Motion to Dismiss

Plaintiffs ask the Court to strike the exhibits to the Plessala Defendants' Motion to Dismiss. (Doc. 46). Defendants attached five exhibits to their Motion to Dismiss:

1. the Settlement Agreement to the Plessala and Murphy Actions (Doc. 10-1);
2. the '274 Patent held by InnoMed Seven (Doc. 10-2);
3. the Plessala Action Complaint (Doc. 10-3);
4. the Murphy Action Complaint (Doc. 10-4); and
5. the Alabama Security Commission's Cease and Desist Order (Doc 10-5).

As grounds for this request, Plaintiffs assert that Rule 12(d) provides that when exhibits outside the pleadings are presented with a Rule 12(b) motion, the motion must be treated as a Rule 56 motion for summary judgment, unless the attachments are excluded by the Court. (Doc. 46, PageID.606). Plaintiffs then conclude that the Plessala Defendants' Motion to Dismiss is therefore a motion for summary judgment, and "the attachments are due to be stricken as they are not authenticated and are hearsay." (Doc. 46, PageID.607). The undersigned finds no merit in these arguments, as they ignore the "two exceptions to the general rule: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024),

> "Under the incorporation-by-reference doctrine, a district court may consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment" if the evidence is "(1) central to the plaintiff's claim; and (2) undisputed, meaning its authenticity is not challenged." *Swinford*, 121 F.4th at 187

9

(citation omitted). It is axiomatic that a breach of contract claim incorporates by reference the contract that was allegedly breached. *E.g.*, *Part Two LLC v. Owners Ins. Co.*, 513 F. Supp. 3d 1302, 1305 n.2 (N.D. Ala. 2021) (considering insurance policy contract when evaluating motion to dismiss breach of contract claim). The Falkners' breach of contract and tortious interference with contract claims plainly depend upon the Settlement Agreement, which is the very contract the Falkners claim has been breached. *SFM Holdings, Ltd. v. Banc of America Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("[S]uch relationship-forming contracts are central to a plaintiff's claim."). Similarly, the '274 Patent is also central to Plaintiffs' claims because the Falkners contend that IMP has attempted to avoid the Earnout Right by allowing other companies to practice that patent without fair compensation. (Doc. 1-2, ¶¶ 17–18). The '274 Patent is therefore central to an evaluation of that claim.

In addition, the Falkners have not sufficiently disputed the authenticity of either document. While the Falkners generally claim that the exhibits are "not authenticated," beyond this bare statement, the Falkners do not contend that the documents have been altered in any way or are not what they purport to be. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1301 (11th Cir. 2024) (concluding that the plaintiff did not dispute the authenticity of evidence attached to a motion to dismiss where the plaintiff did not argue that the evidence was "altered in any way or d[id] not depict what" it purported to depict). Further, the Plessala Defendants state that they have attached publicly filed versions of the Settlement Agreement and '274 Patent whose authenticity cannot be disputed. Accordingly, the Settlement Agreement and '274 Patent are both incorporated by

reference in the Complaint, and, therefore, may be considered without converting the motion to dismiss into a motion for summary judgment.

Furthermore, the Court may also take judicial notice of all five exhibits attached to the Plessala Defendants' Motion to Dismiss without converting the motion to a motion for summary judgment. Courts may take judicial notice of state court filings, like the Settlement Agreement and the Plessala and Murphy Action Complaints. *See Howell v. State Farm Mut. Auto. Ins. Co., 2025 WL 487226*, No. CV 24-241-WS-C, 2025 WL 487226*, at \*2 (S.D. Ala. Feb. 12, 2025) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.") (citing *United States ex rel. Osheroff v. Humana, Inc*., 776 F.3d 805, 811 n.4 (11th Cir. 2015)). Courts may also take judicial notice of public records such as the '274 Patent and the Alabama Securities Commission's Cease and Desist Order. *See Lowe v. Pettway*, 665 F. Supp. 3d 1313, 1330 n.13 (N.D. Ala. 2023) (allowing for public records to be judicially noticed); *see also Weinacker v. Wahl Clipper Corp.*, No. CA 22-314-TFM-MU, 2023 WL 4983282, at \*4, n.1 (S.D. Ala. Apr. 28, 2023), *report and recommendation adopted*, 2023 WL 4982251 (S.D. Ala. Aug. 2, 2023), *aff'd*, No. 23-12782, 2024 WL 2796533 (11th Cir. May 31, 2024). However, the Court notes that the Plessala and Murphy Action Complaints are not being offered for the truth of the allegations therein (Doc. 10, PageID.309, n.3), and those allegations have not been considered in deciding the motion to dismiss.

Because the Settlement Agreement and '274 Patent have been incorporated by reference and the Court may also take judicial notice of the exhibits, the undersigned recommends that Plaintiffs' Motion to Strike (Doc. 46) be **DENIED**.

**2. Motion to Strike Regarding the Crisci Defendants' Motion to Dismiss**

Plaintiffs ask the Court to strike, in its entirety, the Crisci Defendants' Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings. (Doc. 45). First, Plaintiffs make the same argument they raised regarding the Plessala Defendants' Motion to Dismiss – that the motion is actually a motion for summary judgment. (Doc. 45, PageID.601). Second, the Plaintiffs argue that, assuming the Plessala Defendants' motion is a motion to dismiss, the Crisci Defendants cannot adopt the Plessala Defendants' Motion to Dismiss because the Crisci Defendants already filed an answer in state court. (Doc. 45, PageID.601-02). The undersigned also finds no merit in these arguments.

Motions for judgment on the pleadings are adjudicated under the same standard utilized for Rule 12(b)(6) motions – i.e., whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Godwin v. State Farm Mut. Auto. Ins. Co*., No. 1:24-CV-341-TFM-N, 2025 WL 1351533, at *3 (S.D. Ala. May 8, 2025). ("As caselaw is clear that the standards are functionally identical for a Fed. R. Civ. P. 12(b)(6) and 12(c) motion, the Court will apply the *Twombly* standard."). Additionally, the Rule 12(b)(6) incorporation by reference doctrine applies in Rule 12(c) cases as well. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Finally, as with Rule 12(b)(6) motions, judicially noticed facts will not convert a motion for judgment on the pleadings to a motion for summary judgment. *Brown v. Brock*, 169 F. App'x 579, 582 (11th Cir. 2006).

Because the Crisci Defendants have already filed an answer, the undersigned construes their motion as a Motion for Judgment on the Pleadings. However, because

the standards for adjudicating a motion to dismiss and a motion for judgment on the pleadings are the same, the undersigned finds it permissible for the Crisci Defendants to adopt the arguments made in the Plessala Defendants' Motion to Dismiss for purposes of their Motion for Judgment on the Pleadings. Additionally, the Court has already found that the Settlement Agreement and '274 Patent meet the requirements for incorporation by reference and the exhibits to the Plessala Defendants' Motion to Dismiss may also be judicially noticed, and these findings are equally applicable to the Crisci Defendants' Motion for Judgment on the Pleadings. Therefore, the undersigned finds the arguments in Plaintiffs' Motion to Strike (Doc. 45) without merit and recommends the motion be **DENIED**.

### B. Motion to Dismiss/Motion for Judgment on the Pleadings

#### 1. Breach of Contract

Under Alabama law, the elements for a breach of contract claim "'are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1367-68 (S.D. Ala. 2013) (quoting *Shaffer v. Regions Financial Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). Plaintiffs' theory of breach is that IMP has allowed the Ovum Defendants to use the "the InnoMeds patents without fair compensation" and thereby has avoided paying Plaintiffs "the proceeds" to which they claim to be "entitled to under the Settlement Agreement." (Doc. 1-2, PageID.206, ¶¶ 21–22). However, these allegations do not sufficiently demonstrate the third and fourth elements of a breach of contract claim: IMP's nonperformance or resulting damages to Plaintiffs.

First, IMP points out that in the Settlement Agreement, Plaintiffs relinquished their interest in and control of the IMP Companies (Doc. 10-1, ¶¶ 2, 4, 5) and expressly disclaimed "any rights of any kind to compel IMP or the InnoMeds to take any action whatsoever," including to "commercialize the Existing Intellectual Property" or "to make any distributions to members of IMP or the InnoMeds." (Doc. 10-1, ¶ 3(c)). Given this disclaimer, Plaintiffs have no right to challenge any act or failure to act by IMP regarding its intellectual property, including, but not limited to, allegedly allowing "the InnoMeds patents" to be used "without fair compensation." Relatedly, and perhaps more importantly to the breach claim, Plaintiffs have not alleged that the Settlement Agreement requires IMP to commercialize its intellectual property or receive "fair compensation" for its use. While Plaintiffs' theory regarding nonperformance seems to be that IMP did not pay them any "proceeds" to which they claim to be entitled under the Settlement Agreement, in reality, the nonperformance they take issue with is IMP's failure to commercialize or request "fair compensation" for the use of its intellectual property. Plaintiffs have not alleged IMP has any obligation to do this, and Plaintiffs have no right to make them do it.

Consequently, because Plaintiffs have no right to force IMP to commercialize its intellectual property, they rest their breach of contract claim on IMP's alleged failure to pay Plaintiffs "the proceeds" to which they claim to be "entitled." (Doc. 1-2, PageID.206, ¶22). But Plaintiffs have failed to allege sufficient facts to establish their entitlement to any "proceeds" under the Settlement Agreement, and therefore the undersigned sees no basis to support a claim that IMP has failed to perform in any required manner. As explained above, the Plaintiffs' limited Earnout Right under the Settlement Agreement to distributions made to the owners of the IMP Companies only kicks in (1) if certain

14

Triggering Events occur, and (2) after the Floor has been met, defined as repayment of millions of dollars of investment, plus a 10% annual return. (Doc. 10-1, ¶¶ 3(a), 3(b)). However, Plaintiffs have not alleged the occurrence of any Triggering Event. Nor have they alleged (and IMP argues they could not plausibly or in good faith allege) that the Floor has been satisfied, which would first require the realization of millions of dollars in profit from the commercialization of the IMP Companies' intellectual property. Without these allegations to establish the necessary preconditions to payment under the Settlement Agreement, Plaintiffs' theory of breach of contract fails. Because Plaintiffs have not alleged facts to support their entitlement to payment, there has been no nonperformance by IMP, and they have suffered no damages.[5] Accordingly, the breach of contract claim against IMP is due to be dismissed. *See Cajun Steamer Ventures, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1341 (N.D. Ala. 2019) (dismissing of a breach of contract claim for failure "to allege any damages" when plaintiff merely stated that they had "been injured by Defendant's actions"); *see also Shaw v. One West Bank*, FSB, 683 F. App'x 850, 853 (11th Cir. 2017) (affirming dismissal of a breach of contract claim under Georgia law for failure to plead any damages).

### 2. Tortious Interference

Under Alabama law, the elements of a tortious interference claim are: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Terry v. RCHP-Florence, LLC*, 671 F. Supp. 3d 1321, 1325 (N.D. Ala.

---

[5] Because the undersigned has already found that Plaintiffs have not sufficiently alleged two required elements for a breach of contract claim, the Court finds it unnecessary to examine IMP's final argument that "the Falkners have not alleged that the '274 Patent is being practiced or infringed upon." (Doc. 10, PageID.317).

2023) (quoting *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009)). Where, as here, a tortious interference claim is predicated on interference with an existing contractual relationship, the plaintiff must at least allege a breach of or interference with that contract. *See Whatley v. Ohio National Life Insurance Company*, 851 F. App'x 910, 918 (11th Cir. 2021) ("[T]o satisfy the intentional interference element, the defendant must actively procure the breach of a separate contract."); *see also Pakruda v. Cross*, 669 So. 2d 907, 908-10 (Ala. Civ. App. 1995) (finding evidence of intentional interference sufficient when managers induced students to breach their contracts).

Plaintiffs' tortious interference claim is due to be dismissed for the same reasons as their breach of contract claim: that is, the Falkners have not plausibly alleged a breach of or interference with the Settlement Agreement. Plaintiffs have not alleged that IMP is required to commercialize its intellectual property, so the Ovum Defendants cannot be responsible for any damages the Falkners allegedly sustained due to the use of IMP's intellectual property without "fair compensation."  In addition, as explained above, the Falkners have failed to allege sufficient facts to establish their entitlement to any "proceeds" under the Settlement Agreement, and therefore they have not plausibly alleged any resulting damage. Accordingly, Plaintiffs have failed to adequately allege tortious interference with contract and their claims are due to be dismissed.[6] *See K-Mart, Inc. v. Stewart*, 29 So. 3d 887, 892 (Ala. Civ. App. 2009) (finding that the trial court erred in failing to dismiss an intentional interference claim that did not allege interference);

---

[6] Additionally, Defendants correctly assert that the tortious interference claim should be dismissed as to the Plessalas because those Defendants are not "strangers" to the Settlement Agreement: they were parties to it. (Doc. 10, PageID.321). "[A] party to a contract cannot, as a matter of law, be liable for tortious interference with the contract." *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003) (quoting *Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987)).

16

*Barber v. Business Products Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996) (finding no claim for intentional interference when there was no evidence of active interference); *see also Automotive Alignment & Body Service, Inc. v. State Farm Mutual Automobile Insurance Co.*, 953 F.3d 707, 733 (11th Cir. 2020) (dismissing tortious interference claims for failure to allege damages).

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the motions to strike be **DENIED** and the motions to dismiss be **GRANTED without prejudice**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **29th** day of **January, 2026**.

s/P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE
